**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

**TAHANA GUYTON, as Guardian of Donnell Guyton,**

**Plaintiff,**

**v.**

**WESLEY MEDICAL CENTER, LLC,**

**Defendant.**

**Case No. 2:26-cv-02067-HLT-ADM**

**MEMORANDUM AND ORDER**

Donnell Guyton allegedly received negligent medical care by Defendant Wesley Medical Center in February 2024. This case was initiated in February 2026 by Plaintiff Tahana Guyton as guardian for Donnell. In July 2026, Defendant moved to dismiss the case on grounds that Donnell had died in December 2024, some 14 months before the case was filed. Donnell's death also ended Tahana's guardianship, which was formally terminated in February 2025 (about a year before the case was filed). Doc. 27. This came as news to Plaintiff's counsel, however, who apparently was not aware of Donnell's death until Defendant filed the motion. Plaintiff's counsel did not file a response to the motion to dismiss.

However, in acknowledgment that the case could not proceed as captioned, Plaintiff's counsel moves to substitute the real parties in interest under Rule 17. Doc. 29. The motion seeks to add the administrator of Donnell's estate as the plaintiff for the negligence—now survivor—claim and substitute Tahana (as Donnell's heir) as the plaintiff for a wrongful-death claim.

The Court denies the motion to substitute, grants the motion to dismiss, and dismisses this case without prejudice. The case cannot proceed as captioned. Counsel for Plaintiff has not demonstrated an honest mistake in filing this case on behalf of a client who died 14 months earlier

and lacks capacity to sue. And the proposed substitution would not resolve the fundamental flaw in this case because there is no currently appointed administrator of any estate to take up the survivor claim, no plan offered to appoint one, and no wrongful-death claim to substitute Tahana as a plaintiff/heir.

## I. BACKGROUND

The original complaint in this case was filed by Tahana as guardian of Donnell against Wesley Medical Center and HCA Healthcare. Doc. 1.[1] It alleged that Donnell suffered avoidable pressure ulcers/bedsores on or about February 1, 2024, at Wesley Medical Center. *Id.* ¶ 1. Tahana was listed as the duly appointed guardian of Donnell. *Id.* ¶ 3.

The bulk of the original complaint detailed the business structure and relationship between Wesley Medical Center and HCA Healthcare, *id.* ¶¶ 12-45, the existence of personal jurisdiction over HCA Healthcare, *id.* ¶¶ 52-56, the nature of the joint venture or enterprise between the two entities, *id.* ¶¶ 73-86, how the "corporate defendants" directly participated in the actions in the lawsuit through their operations, *id.* ¶¶ 87-99, corporate malfeasance, *id.* ¶¶ 100-107, and a legal basis for HCA Healthcare's liability, *id.* ¶¶ 108-112. These allegations were vague, generalized, and not directly tied to Donnell's care or specific situation.

The only actual specific facts about Donnell were that he was admitted to Wesley Medical Center on or about February 1, 2024, was at risk for suffering pressure ulcers, and that Defendants' staff failed to implement appropriate interventions. *Id.* ¶¶ 60-67. The allegations about substandard care were largely generic and alleged "upon information and belief." *Id.*

[1] The Court provides a fulsome history of this case as necessary background for its ruling. The complaint refers to Tahana as "Plaintiff," and Donnell as "Resident," "Plaintiff/Patient" or "Patient." Unless quoting the complaint, which is unclear and inconsistent in the nomenclature used, the Court refers to the initiating party of this case as a singular "Plaintiff," because the case was filed by Tahana as guardian of Donnell, rather than as Tahana and Donnell as individuals.

The only substantive claim was one claim for negligence. *Id.* ¶¶ 113-129.[2] The original complaint stated that "Plaintiff/Patient was harmed and suffered non-economic damages, including pain, suffering, mental anguish, disability, disfigurement, and loss of enjoyment of life; and other damages" as a result of Defendants' negligence. *Id.* ¶ 122. "Plaintiff" also "suffered economic damages including past and future medical expenses, past and future lost wages, and other economic damages." *Id.* ¶ 123.

The original complaint alleged Defendants knew of their obligations when they "caused and allowed Plaintiff/Patient to suffer an avoidable death and conscious pain and suffering." *Id.* ¶ 125. But other than this reference, the complaint does not specifically allege Donnell died, either at all or as a result of Defendants' negligence. The Court suspects this language referring to "an avoidable death" was part of a form complaint because, as discussed below, Plaintiff's counsel apparently did not know Donnell had died. Although the only named party is "Tahana Guyton, as Guardian of Donnell Guyton," there are also two paragraphs referencing "The Estate." One states "The Estate" is entitled to a jury trial. *Id.* ¶ 128. The other says "Plaintiffs (The Estate) pray for judgment against Defendants in an amount more than $75,000.00 . . . ." *Id.* ¶ 129. But as noted, no estate is a named party to the case. The reference to an estate is likely also just imprecise pleading because, as noted, Plaintiff's counsel was unaware Donnell had died.

Defendants moved to dismiss on March 18, 2026. Doc. 14. Plaintiff did not respond. Instead, on May 14, 2026, nearly five weeks <u>after</u> the response was due, Plaintiff filed a stipulation of dismissal dismissing HCA Healthcare. Doc. 18. That same day, Plaintiff moved for leave to file an amended complaint to remove all allegations against HCA Healthcare and to change the factual

---

[2] There is a second count labeled "Alter Ego Against HCA Healthcare, Inc." Doc. 1 at ¶¶ 130-140. This purports to hold HCA Healthcare liable for Wesley Medical Center's conduct, presumably on the negligence claim.

allegations regarding the timing of Donnell's injury. Doc. 19. Specifically, the proposed amendment now alleged that Donnell suffered pressure ulcers on February 16, 2024, as opposed to February 1, 2024. *See* Doc. 19-1 at 1. This was in response to a statute-of-limitations argument made in Defendants' first motion to dismiss. Doc. 15 at 7 ("Plaintiff alleges that he suffered 'avoidable pressure ulcers/bedsores on or about February 1, 2024.' However, he filed this action on February 2, 2026, the day after the statute of limitations expired.").

Plaintiff's motion to amend said the original complaint cited February 1, 2024, as the injury date because Wesley Medical Center had refused to produce Donnell's medical records before the lawsuit was filed, and Plaintiff (Tahana as guardian for Donnell) did not know the date Donnell was admitted to the hospital until Wesley Medical Center produced a billing record reflecting that date. Doc. 19 at 2. The motion otherwise states that amendment should be allowed and that "nothing else of substance" is changed and "[t]he negligence alleged remains Wesley's failure to prevent and to treat a pressure ulcer that developed during [Donnell]'s inpatient stay." *Id.* at 5.

The motion to amend also clarified that the original pleading had been based on a "reasonable inquiry." *Id.* at 6. The motion cited Rule 11 and noted that the rule is satisfied "where counsel conducts a reasonable inquiry and pleads consistently with the information then available." *Id.* Because Wesley Medical Center did not produce the billing records until apparently May 2026, Plaintiff's counsel contended he was only able to plead "based on the limited information then available." *Id.* at 7. Again, the motion did not state why neither Tahana or Donnell knew the date Donnell was admitted to the hospital or suffered the injury that was the basis for the negligence claim in this case.[3]

[3] Donnell had passed away approximately 14 months before the case was filed. So at the time the case was filed, he obviously could not have provided this information. There is no explanation why Tahana, as Donnell's guardian, did not know this information. It is also unclear when Plaintiff's counsel was hired or why this information was not discovered prior to Wesley Medical Center's production of records long after the case had been filed.

Defendant (now just Wesley Medical Center after the voluntary dismissal of HCA Healthcare) subsequently informed the Court it did not oppose amendment, and the Court granted leave to amend. Doc. 22. The amendment mooted the first motion to dismiss, which was denied without prejudice and with leave to Defendant to respond to the amended complaint in accordance with the applicable rules. Doc. 23. Plaintiff filed the amended complaint. Doc. 24. Again, nothing of substance was changed, other than the date of the injury and removal of the allegations about HCA Healthcare.

Defendant again moved to dismiss on July 7, 2026. Doc. 27. This second motion challenged Plaintiff's capacity to file suit at the time the case was filed on February 2, 2026. This was because Donnell passed away on December 8, 2024, and Tahana's guardianship over Donnell had been terminated on February 11, 2025. Doc. 28 at 1-2. So neither had capacity to assert a negligence claim on behalf of Donnell when this case was filed.

Once again, Plaintiff's counsel did not respond to the motion. Instead, about a week after a response was due, Plaintiff's counsel filed a motion to substitute. Doc. 29. That motion began with the following statement: "Undersigned counsel first learned of Donnell Guyton's death when defendant filed its second motion to dismiss in this matter on July 7, 2026." *Id.* at 2. Plaintiff's counsel argued that substitution, not dismissal, was the proper remedy. *See generally id.*

The substitution motion does not dispute that Donnell died December 8, 2024, and that the guardianship held by Tahana ended in February 2025. And Plaintiff's counsel admits that "this case got captioned wrong from the start." *Id.* at 2. But the motion argues the Court should allow time to cure in the form of "substitut[ing] the two people who hold these claims—the surviving spouse on the wrongful death claim [and] the personal representative on the survival claim." *Id.*[4]

[4] The motion to substitute also argues that Defendant waived the defense that Plaintiff lacked capacity to sue because Defendant previously filed a motion to dismiss that did not raise the issue. Doc. 29 at 10. It's not clear how or why

The motion to substitute states that the complaint "[f]rom the outset . . . has sought the harm a survival action preserves—'conscious pain and suffering, and deterioration of Plaintiff/Patient's physical condition.'" *Id.* at 3. The motion suggests Tahana as surviving spouse and heir can bring a wrongful-death claim, and the survival claim for Donnell's pain and suffering "belongs to the personal representative." *Id.* at 4. According to Plaintiff's counsel, the "mistake" about Donnell's death was honest because he (Plaintiff's counsel) "did not know." *Id.* at 8. There's no elaboration on this point. He also argues there is no prejudice to Defendant because the claim for Donnell's conscious pain and suffering has been in the case from the start, the only change is to the caption, and the substitution relates back to the original filing. *Id.* at 8-9. Plaintiff's counsel contends "[t]he wrongful death claim needs no relation back" because that limitations period does not run until December 8, 2026 (two years after Donnell died). *Id.* at 10.

The motion to substitute contends that Rule 17 allows a reasonable time to cure, beginning on July 7, 2026, when Plaintiff's counsel found out about his client's death via Defendant's motion. *Id.* at 7-8. Because the motion to substitute was filed less than a month later, Plaintiff's counsel contends that the timing of the request to substitute is reasonable. He seeks an order:

> (1) substituting Tahana Guyton, individually, as an heir at law suing for the benefit of all heirs, as plaintiff on the wrongful death claim; (2) substituting her as administrator of the Estate of Donnell Guyton, Sr. on the survival claim, letters to be filed upon issuance; (3) granting leave to file the Second Amended Complaint (4) providing that this action proceeds as if originally commenced by the real parties in interest; and (5) denying Defendant's motion (Doc. 27) as moot.

---

Defendant should have known Donnell died if Plaintiff's counsel did not. Plaintiff's counsel goes so far to suggest that Defendant could have discovered this information via a public records search, with no explanation as to why he could not have also learned the information about Donnell's death the same way (let alone by a phone call to his client). Regardless, there seems to be no dispute that Donnell died and Tahana's guardianship ended. Nor is there any dispute that the case is currently without a proper plaintiff on the singular claim in the case. Even to the extent Defendant could or should have raised the issue sooner, the motion to substitute makes that a moot point by conceding the premise. The Court also notes Plaintiff's counsel (again) never timely responded to the motion to dismiss, which means any waiver argument has been waived.

*Id.* at 12.

Defendant responds that substitution is not proper because there is no valid party to take on the survival claim (because no estate has been established or administrator appointed). Doc. 30 at 5-6. Substitution is also not proper because the motion seeks to add an entirely new wrongful-death claim that is not currently in the case, which would be prejudicial to Defendant, and for which no motion under Rule 15 has been filed. *Id.* at 8-9. Finally, Defendant argues there can be no honest mistake in this case where the mistake is inexplicable and irrational. *Id.* at 7.

No reply was filed.

## II. ANALYSIS

Rule 17 requires that cases be prosecuted "in the name of the real party in interest." Fed. R. Civ. P. 17(a). "The court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action." *Id.*; *see also Esposito v. United States*, 368 F.3d 1271, 1272 (10th Cir. 2004) ("Rule 17(a) requires the district court to provide the party bringing an action with a reasonable time after objection to substitute the real party in interest."). Whether to join or substitute a party as the "real party in interest" is within a district court's discretion. *Esposito*, 368 F.3d at 1273.

Following the analysis in *Esposito*, the Court first considers whether substitution is needed in this case. Second, it considers whether the need for substitution is attributable to an "honest" mistake and whether substitution would prejudice Defendant. And third, the Court considers whether the requested substitution would solve the underlying problem.

**A. Whether Substitution is Needed**

The Court first considers whether substitution is necessary. *See id.* (considering whether substitution was necessary or whether the case could proceed as originally filed). The parties seem to agree that, at the very least, the case cannot proceed as captioned. *See* Doc. 28 at 1-2; Doc. 29 at 2. Donnell has died and lacks capacity to sue for negligence as a result. *See Esposito*, 368 F.3d at 1273 ("Under Kansas law, a decedent lacks capacity to sue or be sued."). And any guardianship Tahana held has ended, meaning she also lacks capacity to sue on Donnell's behalf as guardian. Substitution is therefore necessary for the case to proceed.

**B. Whether the Mistake was "Honest" and Whether Defendant Will Be Prejudiced**

The Court's second consideration is whether it should permit substitution under the circumstances at hand. *See id.* at 1274-75. The Tenth Circuit has rejected a reading of Rule 17 that would "require that a party always be given a reasonable time to substitute the real party in interest where objection has been made." *Id.* at 1275. Doing so would "countenance conduct in violation of the spirit of the Rules." *Id.* However, a mistake in naming the wrong party need not be "understandable" in addition to being "honest." *Id.* at 1276. Rather, courts should consider "whether the plaintiff engaged in deliberate tactical maneuvering (i.e. whether his mistake was 'honest'), and on whether the defendant was prejudiced thereby." *Id.* "[E]ven a mistake that should have been patently obvious does not automatically foreclose a later substitution, so long as the plaintiff did not act in bad faith and the defendant has not been prejudiced thereby." *Id.* However, "a party's mistake in naming the plaintiff in a wrongful death action could be so inexplicable and irrational as to raise an inference that it was not an 'honest' mistake." *Id.* at 1276-77.

Whether the mistake here was "honest" is highly questionable. The Court has serious concerns about how Plaintiff's counsel filed a case on behalf of a person who died 14 months

earlier, via their guardian whose authority had been terminated 12 months earlier. The only explanation offered is the perhaps obvious statement that "counsel did not know." Doc. 29 at 8. This explanation is no real explanation at all. It frankly seems "inexplicable and irrational" to believe that even minimal inquiry or consultation would not have uncovered these facts.[5]

Prejudice to Defendant must also be considered. The motion to substitute contends there is none because "Wesley has defended these allegations since March 2026, knowing from the first pleading that this case seeks recovery for Mr. Guyton's conscious pain and suffering on behalf of his estate." Doc. 29 at 8. This is not at all accurate. Although the complaint includes two vague references to an estate, no one seemed to be aware that Donnell had died. There was no wrongful-death claim in the original or amended pleading. The negligence claim is not pleaded as a survival claim. And contrary to the substitution motion, which states that Donnell's death "does not change the conduct [Defendant] has been defending since March," *id.*, the proposed substitution very much would change this case, as Plaintiff purports to add a wrongful-death claim,[6] *see Est. of Ferrell by & through Ferrell v. KB Custom Ag Servs. LLC*, 2025 WL 2461287, at *8 (D. Kan. 2025) ("Normally, the prejudice contemplated in allowing a third party to ratify the commencement and continuation of a lawsuit involves . . . not knowing the relevant parties in the action and what the critical issues would be." (internal quotation and citation omitted)).[7]

---

[5] These concerns are not just related to whether this mistake was "honest" under Rule 17. They also relate to Plaintiff's counsel's obligation under Rule 11(b), which states that an attorney's signature on a pleading "certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances" that, among other things, "the claims, defenses, and other legal contentions are warranted by existing law" and "the factual contentions have evidentiary support." Fed. R. Civ. P. 11(b). The Court questions how counsel made the requisite reasonable inquiry about this case without uncovering the fairly significant fact that Donnell had died over a year earlier and Tahana's role as guardian had ended. This is underscored by the fact that counsel apparently also did not know the date the alleged injury occurred until Defendant's records were produced. Indeed, the Court questions what inquiry counsel did at all before filing this case.

[6] As discussed further below, no motion to amend to add this claim has been filed.

[7] The motion to substitute suggests there is no prejudice because a separate wrongful-death claim could still be filed. Doc. 29 at 10. This order does not consider or decide the propriety of any subsequently filed case or action.

The Court is also mindful of the entire history of this case in considering prejudice to Defendant. Although the case has been pending for over seven months, it has been somewhat stuck in a cycle of Defendant having to make Plaintiff's counsel aware of crucial facts through the filing of motions to dismiss, which have gone unanswered until Plaintiff's counsel belatedly attempts to clean up the record.

In sum, the Court cannot conclude on the current record that the mistake in this case was honest and that the requested substitution would not prejudice Defendant.

**C. Whether the Requested Substitution Will Solve the Problem**

The Court's third consideration is whether the requested substitution would solve the underlying problem. *See Esposito*, 368 F.3d at 1274-75. The Court finds the requested substitutions would not solve the fundamental problem here for two reasons.

First, the motion to substitute suggests Tahana, as administrator of Donnell's estate, could be substituted as the plaintiff on the "survival claim." Doc. 29 at 12. The current claim in the case is for negligence. Perhaps the negligence claim could fairly be construed as a survival claim that could be pursued by Donnell's estate. *See Ferrell*, 2025 WL 2461287, at *6 (explaining a survival claim for recovering damages suffered by a decedent before death may be brough by an estate administrator). But there is no indication an estate for Donnell has been opened and no indication Tahana has been appointed administrator of any such estate. Pointedly, the motion doesn't state an estate has been opened or anyone appointed administrator and in fact suggests the opposite. *See* Doc. 29 at 12 (stating "letters to be filed upon issuance"). Suit by an estate before formal appointment has been allowed. *See McPhaul v. Coll. Hills Opco, LLC*, 2026 WL 35048, at *5 (D. Kan. 2026). But the Court is hesitant to allow substitution under such circumstances in this case. Despite more than 60 days passing since Plaintiff's counsel became aware of the problems in this

case, there's no indication he or anyone else has taken the necessary steps to create the correct party (the estate) to pursue Donnell's survival claim.[8]

Second, the motion to substitute suggests Tahana could be substituted individually as an heir at law "as plaintiff on the wrongful death claim." Doc. 29 at 12; *see also Esposito*, 368 F.3d at 1274 (explaining that, under Kansas law, a decedent's heirs at law may bring a wrongful-death action). But there is no wrongful-death claim in this case. There has never been a wrongful-death claim because counsel did not know anyone had died. The motion to substitute rather blithely references a Second Amended Complaint. But there is no Second Amended Complaint, and no motion for leave to file another amended complaint has ever been filed.[9] So even if Tahana (as Donnell's heir) would be a proper plaintiff on a wrongful-death claim, there is no wrongful-death claim.

So, in sum, the motion to substitute cures nothing. The motion seeks to <u>substitute a party who does not yet seem to exist</u> on the only claim arguably in this case, and it seeks to substitute a party for <u>a claim that does not currently exist</u> in the case. Granting the motion under these circumstances would not solve the fundamental problem or put this case in any better position than it is currently in. *See Esposito*, 368 F.3d at 1274-75.[10]

---

[8] *McPhaul* also involved Plaintiff's counsel. There, counsel filed a complaint on August 16, 2024, in an initial case, which stated the plaintiff was "in the process" of having an estate administrator appointed. *McPhaul*, 2026 WL 35048, at *1. But the petition for appointment of an administrator was not actually filed in probate court until January 13, 2025 (and thus had not been "in the process" at the time the case was filed). *Id.* And no timely amendment was filed in the first case to confirm actual appointment of the administrator. *Id.* However, survival claims/allegations continued to pop up throughout the case. *Id.* at *2. After the inconsistency was noted, counsel filed a second case asserting the survival action by the then-formally-appointed administrator. *Id.* The case was subsequently dismissed on grounds of impermissible claim-splitting. *Id.* at *5-6.

[9] The deadline for motions to amend has passed. *See* Docs. 21 and 32. Plaintiff's counsel recently sought extension of some scheduling order deadlines but did not request an extension of the deadline for motions to amend. *See* Doc. 31.

[10] The fact that the motion to substitute does not cure the problem would be dispositive even if the Court found the underlying mistake in framing this case to be "honest."

The motion to substitute argues that a court cannot dismiss an action for lack of a real party in interest until an objection has been lodged and reasonable time to cure through substitution has been allowed. It argues the motion to dismiss was the objection, and the motion to substitute is the cure that was filed within a reasonable time. *See* Doc. 29 at 2 ("Wesley's July 7 motion is the objection; this motion is the cure the Rule allows time for."). But as discussed, the motion to substitute cures nothing. To the extent additional steps could have been or still could be taken to address these concerns, it's not apparent that Plaintiff's counsel has taken or is taking those steps.[11] The Court is disinclined to allow yet more time for Plaintiff to fix the fundamental load-bearing flaw in this case that frankly seems like it could have been avoided with minimal inquiry from the start.

## IV. CONCLUSION

In sum, the current claim in this case cannot be pursued by either Tahana as guardian or by Donnell. The motion to substitute does not demonstrate that the mistake in bringing this case by Tahana as guardian for Donnell was honest. It was frankly inexplicable and irrational that even minimal inquiry did not uncover the fact that Donnell had died and the guardianship had ended. Further, the proposed substitution will prejudice Defendant given the proposed addition of a new wrongful-death claim. Finally, and importantly, the course of action proposed in the motion to substitute will not fix the problem that necessitated substitution in the first place (no real party in interest) because it seeks to substitute a party that does not seem to exist and a party for a claim that does not exist.

[11] To the extent Plaintiff's counsel has been working behind the scenes to address these matters, no update has been forthcoming. No letters of administration have been provided, and no motion to amend has been filed. These flaws were noted in Defendant's response. *See generally* Doc. 30. Again, no reply was filed.

THE COURT THEREFORE ORDERS that Plaintiff's Motion to Substitute (Doc. 29) is DENIED.

THE COURT FURTHER ORDERS that Defendant's Motion to Dismiss (Doc. 27) is GRANTED. This case is DISMISSED WITHOUT PREJUDICE.

THE COURT FURTHER DIRECTS the Clerk of Court to mail a copy of this Memorandum and Order to the Office of the Disciplinary Administrator for Kansas.

IT IS SO ORDERED.

Dated: September 10, 2026

/s/ *Holly L. Teeter*
HOLLY L. TEETER
UNITED STATES DISTRICT JUDGE